IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ANGELA THOMPSON                                                PLAINTIFF

V.                                      NO. 12-5273

CAROLYN W. COLVIN,[1]
Acting Commissioner of the Social Security Administration          DEFENDANT

**AMENDED MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Angela Thompson, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying her claim for a period of disability, and disability insurance benefits

(DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the

Court must determine whether there is substantial evidence in the administrative record to

support the Commissioner's decision. See 42 U.S.C. § 405(g).

I.      **Procedural Background:**

This case is was remanded by the undersigned in Thompson v. Astrue, No. 10-CV-5076

(W.D. Ark. Feb. 3, 2011).  The undersigned directed the ALJ to obtain a mental RFC assessment

from an examining mental health professional, to submit interrogatories to two doctors, and to

have one of them complete a physical residual functional capacity (RFC) assessment. (Tr. 288).

The Appeals Council also directed the ALJ to associate the subsequent claim for Title II benefits

---

[1]Carolyn W. Colvin, has been appointed to serve as acting Commissioner of Social Security, and is substituted as
Defendant, pursuant to Rule  25(d)(1) of the Federal Rules of Civil Procedure.

AO72A
(Rev. 8/82)

filed on December 30, 2009, and issue a new decision on the associated claims. (Tr. 288).
Subsequent thereto, on July 6, 2012, the ALJ held a video hearing, where Plaintiff appeared with
counsel and testified. (Tr. 288).

In the previous case, Plaintiff protectively filed her application for DIB on May 18, 2007,
alleging disability beginning April 19, 2007, due to microscopic colitis, gastric dumping
syndrome, a history of abdominal pain, a bulging disc in her cervical spine, as well as multiple
other ailments including fribromyalgia, asthma, and migraine headaches, and depression. (Tr.
103, 110, 347, 513).  A hearing was first held on March 2, 2009 (Tr. 347), and hearings were
held subsequent to the remand, on February 2, 2012, and July 6, 2012, at which Plaintiff testified.
(Tr. 310-331, 332-337).

By written decision dated August 28, 2012, the ALJ found that Plaintiff had an
impairment or combination of impairments that were severe - gastrointestinal disorder, asthma,
major depressive disorder and/or dysthymia[2] and/or mood disorder, panic disorder and
undifferentiated somatoform disorder. (Tr. 290). However, after reviewing all of the evidence
presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of
severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P,
Regulation No. 4. (Tr. 292). The ALJ found Plaintiff retained the RFC to:

> lift and/or carry 10 pounds occasionally and less than 10 pounds
> frequently, sit for six hours and stand/walk for two hours. She can
> occasionally climb, balance, crawl, kneel, stoop and crouch, and she must
> avoid concentrated exposure to pulmonary irritants. Nonexertionally, she
> can understand, remember and carry out simple, routine and repetitive

---

[2]Dysthymia - A chronic mood disorder manifested as depression for most of the day, more days than not,
accompanied by some of the following symptoms: poor appetite or overeating, insomnia or hypersomnia, low
energy or fatigue, low self-esteem, poor concentration, difficulty making decisions, and feelings of hopelessness.
Stedmans' Medical Dictionary 602 (28th ed. 2006).

AO72A
(Rev. 8/82)

> tasks and respond to usual work situations and routine work changes. She can respond to supervision that is simple, direct and concrete. She can occasionally interact with supervisors, coworkers and the general public.

(Tr. 294). With the help of a vocational expert (VE), the ALJ determined Plaintiff was not capable of performing her past relevant work, but that there were other jobs Plaintiff would be able to perform, such as compact assembler and production workers (label cutter machine operator and inspector/checkers/nut sorters). (Tr. 300).

Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed briefs and this case is before the undersigned for report and recommendation. (Docs. 9, 12).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.   Evidence Presented:

In the Memorandum Opinion issued by the undersigned in Thompson, id., the ALJ was directed to obtain a mental RFC assessment from an examining mental health professional to address how the Plaintiff might function in the workplace; to submit interrogatories to Dr. Mullins, requesting clarification of his fourth diagnosis and to ascertain whether, in Dr. Mullins' opinion, the Plaintiff's gastrointestinal problems would allow her to work an eight (8) hour shift without taking frequent and unscheduled breaks; to determine from Dr. Mullins the extent that the non-gastrointestinal diagnoses, especially her fibromyalgia, would affect her ability to function in the workplace; to submit interrogatories to Dr. McCallum to determine whether Plaintiff's gastrointestinal problems would allow her to work an eight (8) hour shift without taking frequent and unscheduled breaks; and to require Dr. McCallum to complete a physical RFC assessment.  (Tr. 351).

In response to the remand directives, the ALJ obtained a Mental Diagnostic Evaluation and Medical Source Statement of Ability to do Work-Related Activities (Mental) from Terry L. Efird, Ph.D., dated August 10, 2011 (Tr. 572-576, 577-579); a Mental Diagnostic Evaluation from Catherine Hubbard Adams, Ph.D., dated March 19, 2012 (Tr. 842-847); and a General Physical Examination conducted by Dr. C.R. Magness, dated March 20, 2012 (Tr. 848-853). In response to inquiry, Dr. Mullins sent a letter, stating that he did a "one time"visit with Plaintiff, who was not a regular patient of his, and that there was no physical performed for disability determination for social security on December 16, 2008. (Tr. 821). Dr. Mullins did, however, clarify his fourth diagnosis, as "possible chronic arthritis." (Tr. 821). With respect to Dr. McCallum, a response was not received from him by Plaintiff's attorney or the ALJ, as he was no longer at the University of Kansas.

In the previous case, the ALJ found that Plaintiff was capable of performing light work with certain environmental and non-exertional limitations. (Tr. 348). In the ALJ's recent decision, the ALJ found that Plaintiff was capable of performing sedentary work with certain exertional and non-exertional limitations.

A brief review of the medical records obtained subsequent to the remand indicates that on March 23, 2011, Plaintiff complained to Mercy Clinic of vaginal itching and was also seen for back pain. (Tr. 904). She was assessed with urinary pain, vaginal odor, vaginal discharge, vaginitis, recurrent vaginitis, and a history of gestational diabetes mellitus, not currently pregnant. (Tr. 904). She again presented to Mercy Clinic on April 27, 2011, complaining of urinary frequency, urgency and dysuria[3] and vaginal discharge and was taking Metanx, which

---

[3]Dysuria - Difficulty or pain in urination. Id. at 604.

she had started the prior year, due to her celiac disease. (Tr. 906).  On July 3, 2011, Plaintiff presented to Mercy Clinic for a spider bite on her right foot. (Tr. 907).

On July 26, 2011, Plaintiff presented herself to Dr. David Garrett, who reported that Plaintiff wanted to talk about doing some more stool testing, specifically looking for ova and parasites. (Tr. 783). Plaintiff was having abdominal discomfort and abdominal pain, with increasing urinary frequency. (Tr. 783). She was assessed with urinary tract infection, abdominal pain, nausea and diarrhea, and a possible ventral hernia. (Tr. 783).

On August 10, 2011, Dr. Terry L. Efird conducted a Mental Diagnostic Evaluation. (Tr. 572-576).  Plaintiff reported to Dr. Efird that she was applying for disability benefits because she was "chronically ill." (Tr. 572).  Diarrhea, bloating, and gas were described as prominent symptoms. She also reported having been prescribed antidepressant medications. (Tr. 572). Plaintiff denied inpatient psychiatric treatment and denied psychiatric medications, and reported financial obstacles to treatment. (Tr. 573). Dr. Efird diagnosed Plaintiff as follows:

> Axis I:     Major depressive disorder, mild to moderate; panic disorder, with agoraphobia
> Axis II:    Deferred
> Axis V:     50-60 - Claimant endorsed the ability to drive unfamiliar routes. The ability to shop independently was described as impaired to some extent by anxiety and problems lifting heavy objects....The ability to perform most ADL's adequately was endorsed. Social interactions were described as generally going to church weekly. Otherwise, she reported having been primarily socially isolated for several years.

(Tr. 575).  Dr. Efird found that Plaintiff communicated and interacted in a reasonably socially adequate manner; communicated in a reasonably intelligible and effective manner; had the capacity to perform basic cognitive tasks required for basic work like activities and performed

AO72A
(Rev. 8/82)

most basic cognitive tasks adequately during the evaluation; appeared able to track and respond adequately for the purposes of the evaluation; generally completed most tasks during the evaluation, and no remarkable problems with persistence were noted during the evaluation; appeared to have the mental capacity to persist with tasks if desired; and her mental pace of performance was a bit slow, but probably within normal limits. (Tr. 575).  In his Medical Source Statement of Ability to do Work-Related Activities (Mental), Dr. Efird concluded that Plaintiff had marked restriction in her ability to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 578). He also found that Plaintiff was predicted to have marked difficulty coping with work related stressors from the symptom of depression and anxiety. (Tr. 578).

On September 16, 2011, Plaintiff underwent an Esophagogastroduodenoscopy, which revealed a normal upper third of the esophagus, middle third of the esophagus, and lower third of the esophagus, normal body of the stomach, cardiac, fundus,[4] and incisura. (Tr. 778). Erythematous mucosa was found in the antrum and multiple biopsies were taken. (Tr. 778). A hiatus hernia was found in the stomach and a normal duodenal bulb and 2nd portion of the duodenum were found. (Tr. 778).

On November 18, 2011, Plaintiff saw Dr. David C. Garrett, wanting to go over the MRI report on her kidneys, and also reported having some spasticity of the vessels in her feet. (Tr. 781). She also continued to have discomfort in the abdomen. She was assessed with vascular

---

[4]Fundus - The bottom or lowest part of a sac or hollow organ; that part farthest removed from the opening or exit; occasionally a broad cul-de-sac. Id. at 777.

AO72A
(Rev. 8/82)

spasming and possible Raynaud's phenomenon;[5] renal cysts, somewhat atypical; and abdominal discomfort. (Tr. 782).

On December 6, 2011, Plaintiff complained to Mercy Physicians Plaza of urinary frequency, urgency and dysuria, and was assessed with a urinary tract infection, uncomplicated without evidence of pyelonephritis.[6] (Tr. 788).  On December 12, 2011, Plaintiff visited Benton County Urology, upon referral by Dr. Garrett. (Tr. 701).  At that visit, a left renal cyst appeared to be a simple cyst, and no intervention was needed. (Tr. 702).

On December 16, 2011, a Colonoscopy Procedure Report revealed a single diminutive polyp in the ascending colon, which was removed. (Tr. 776).

On February 16, 2012, Plaintiff again presented to Benton County Urology, reporting pain with urination. Dr. Robert Zimmerman assessed her with dysuria. (Tr. 894).

On March 8, 2012, Plaintiff presented herself to Mercy Clinic for bowel issues, stating that her abdomen felt bloated after meals, and she was wondering if she had h pylori again. (Tr. 900). She was assessed with abdominal bloating.

On March 19, 2012, A Mental Diagnostic Evaluation was conducted by Catherine Hubbard Adams, Ph.D. (Tr. 842-847).   In her report, Dr. Adams noted that Plaintiff told her that her digestive issues began as a child, and then later said that the stomach issues began at the age of 19. (Tr. 842). Plaintiff also told Dr. Adams she had not attended therapy in the past five years and had taken three different antidepressants over the years. (Tr. 842). Dr. Adams reported that

[5]Raynaud phenomenon - Spasm of the digital arteries, with blanching and numbness or pain of the fingers, often precipitated by cold. Fingers become variably red, white, and blue. Id. at 1478.

[6]Pyelonephritis - Inflammation of the renal parenchyma, calyces, and pelvis, particularly due to local bacterial infection. Id. at 1608.

Plaintiff did not display cognitive impairments during the evaluation and there was not enough evidence gathered to suggest a personality disorder during the evaluation. (Tr. 843). Plaintiff told Dr. Adams she completed an Associates' Degree in Science and completed a Dental Assistant Certificate. (Tr. 844). Dr. Adams reported that many of Plaintiff's symptoms seemed to be related to her multiple physical conditions. (Tr. 845). Dr. Adams diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | Mood Disorder due to Multiple Medical conditions |
| | Undifferentiated Somatoform Disorder |
| Axis II: | Deferred |
| Axis IV: | Problems with social environment and occupational |
| Axis V: | 68 |

(Tr. 846). Dr. Adams reported that Plaintiff's mental impairments seemed to "drastically interfere with daily functioning." (Tr. 846). She also reported that Plaintiff's interactions during the interview were "socially awkward." (Tr. 846). Dr. Adams indicated that Plaintiff seemed to have mild difficulty with most cognitive demands of work tasks, but seemed to do well on most cognitive tasks during the examination. She also reported that Plaintiff seemed to have little difficulty attending and sustaining concentration on basic tasks; had mild to moderate difficulty sustaining persistence in completing work tasks; and seemed to have mild to moderate difficulty completing tasks within an acceptable time. (Tr. 847).

On March 20, 2012, Dr. C.R. Magness conducted a General Physical Examination. (Tr. 848-853). Upon examination, Plaintiff had decreased range of motion in her neck and only slightly decreased range of motion in her extremities and spine. (Tr. 851). She had muscle weakness in all four extremities at level 1-2, had bilateral upper extremity neuropathy, and had 70% grip in her right hand and 60% grip in her left hand. (Tr. 852). Dr. Magness found Plaintiff

-8-

had moderate to severe limitations in her ability to lift, carry, walk, and stand. (Tr. 853).

In May and June of 2012, Plaintiff suffered from acute sinusitis. (Tr. 897, 902). On June 15, 2012, Plaintiff was diagnosed at Mercy Hospital with a 4.7 cm x 4.8 cm simple cyst upper pole left kidney. (Tr. 878). On June 19, 2012, Dr. Zimmerman diagnosed Plaintiff with an acquired renal cyst and dysuria. (Tr. 891).

On June 29, 2012, Plaintiff presented herself to Mercy Clinic, requesting to have a bone scan test performed, and complained of multiple bowel movements within a short period of time. (Tr. 939). She was assessed with diarrhea, abdominal pain, celiac disease, and abdominal pain, generalized. (Tr. 940).

## III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

-9-

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC). See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**IV.    Discussion:**

Plaintiff presents the following arguments on appeal: 1) The ALJ erred in evaluating the medical opinion evidence of record; 2) The ALJ erred in failing to consider the combined effects

-10-

of all of Plaintiff's impairments, severe and non-severe; and 3) The ALJ's decision is not supported by substantial evidence. (Doc. 9).

### A.    Weight of the Evidence:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In its previous decision remanding the case, the undersigned was concerned about Plaintiff's chronic abdominal pain and abnormal bowel function, and stated that it appeared that little weight was given to the records from the Colon and Rectal Clinic of Northwest Arkansas, the Wellquest Clinic, and the University of Kansas Medical Center. (Tr. 350).

In this case, the ALJ discussed the fact that Plaintiff testified she was following a gluten free diet and that she was better, but still had fatigue. (Tr. 294). The ALJ also addressed the findings of one of Plaintiff's treating physicians, Dr. Kuntal M. Thaker, noting that in a follow-

-11-

up in April of 2007, Plaintiff reported right upper quadrant abdominal pain with radiation to her mid back, nausea and increased abdominal bloating, but reported her diarrhea had resolved since the last visit. (Tr. 295). The ALJ also discussed the evaluation Plaintiff underwent at the University of Kansas Medical Center (UKMC) between June 22, 2007 and November 6, 2007, where she underwent various tests and was diagnosed with dumping syndrome, presenting as irritable bowel like symptoms. (Tr. 295).  The ALJ discussed the medical records from Dr. C. Wade Fox, dated May 15, 2008, where Dr. Fox advised Plaintiff that he did not do disability examinations and was also unsure under what criteria she would qualify for disability.  (Tr. 295). The ALJ noted that according to a Parkhill Clinic report, Plaintiff was feeling better following a gluten restricted diet. (Tr. 296).

The ALJ also addressed the report of Dr. Mullins and Dr. David K. A. Magee, regarding her gastrointestinal issues. (Tr. 296). He concluded, after reviewing the evidence, that it appeared that Plaintiff's symptoms responded relatively well to diet modification and Metanx, and that there was no evidence that Plaintiff was unable to maintain adequate nutrition or that she had undergone surgical diversion of her intestinal tract or surgical resection of her small intestine. (Tr. 296). He also noted that there was no evidence Plaintiff's treating physicians have assessed her with limitations greater than those determined in his decision. (Tr. 296).  The ALJ concluded that Plaintiff's daily activities were also inconsistent with a disabling impairment, and that Plaintiff indicated she quit her most recent job due to the fact that the client she was caring for in 2009 was "crazy" and not because of her condition. (Tr. 296).

The ALJ also discussed the directives given in the undersigned's remand order, and the fact that while Dr. Mullins did not complete the interrogatories, he submitted a statement dated

-12-

January 19, 2012, showing the following diagnoses from his one-time examination performed on December 16, 2008: chronic colitis since age 13, with chronic diarrhea, bloating and pain; history of mild asthma (none detected today); history of mild anemia; possible chronic arthritis; some fibromyalgia; and history of migraine headache. (Tr. 298), The ALJ found that the diagnoses were not necessarily determined to be severe by the medical evidence and that Dr. Mullins did not assess the claimant with any work-related limitations. (Tr. 299). The ALJ also reported that interrogatories were submitted to Dr. Richard McCallum, but that he was no longer at UKMS and did not respond to the interrogatories.

The ALJ gave significant weight to the limitations given by Dr. Magness in his March 2012 report, where he found that Plaintiff had moderate to severe limitations in her ability to lift, carry, walk and stand. (Tr. 298). As a result, the ALJ incorporated the limitations in his RFC that Plaintiff can perform sedentary work and can occasionally climb, balance, crawl, kneel, stoop and crouch, and must avoid concentrated exposure to pulmonary irritants. (Tr. 294).

With respect to Plaintiff's alleged mental impairments, the ALJ gave significant weight to the opinions of Dr. Curtis and Dr. Adams,  and gave significant weight to Dr. Efird's opinion except as it related to his finding of a marked impairment in responding appropriately to usual work situations and to changes in a routine work setting due to work related stressors from the symptoms of depression and anxiety. (Tr. 298).  The Court believes that considering all three mental evaluations as a whole, the ALJ was correct in concluding that there was insufficient evidence to support Dr. Efird's finding that Plaintiff suffered from a marked impairment.

Based upon the foregoing, as well as the reasons given in Defendant's well-stated brief, the Court finds there is substantial evidence to support the fact that the ALJ gave proper

consideration to all of the evidence of record, and gave the medical opinions appropriate weight.

### B. Combined Impairments:

Plaintiff argues that the ALJ erred in failing to consider the combined effects of all of Plaintiff's impairments, severe and non-severe.  Plaintiff refers to Plaintiff's interstitial cystitis and chronic urinary tract infections.

In his decision, the ALJ set forth the fact that at step two, he must determine whether Plaintiff had "a medically determinable impairment that is 'severe' or a combination of impairments that is 'severe.'" (Tr. 289).  He also stated that an impairment or combination of impairments is "not severe" when medical and other evidence established only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  (Tr. 289).  The ALJ stated that at step three, he must determine whether the Plaintiff's "impairment or combination of impairments" meets or medically equals the criteria of an impairment listed in the relevant listings.  (Tr. 289).  The ALJ concluded that Plaintiff did not have an impairment "or combination of impairments" that met or medically equaled the severity of one of the listed impairments.  (Tr. 289).  This language demonstrates that the ALJ considered the combined effect of Plaintiff's impairments.  See Martise v. Astrue, 641 F.3d 909, 924 (8th Cir. 2011); Raney v. Barnhart, 396 F.3d 1007, 1011 (8th Cir. 2005).

In addition, the ALJ discussed Plaintiff's bladder problems and interstitial cystitis. (Tr. 291). He noted that a kidney MRI scan showed a renal cyst, which appeared to be a simple cyst, and no intervention was needed. (Tr. 291, 702).  He stated that it was reported that a renal ultrasound showed that the simple renal cyst had increased in size only slightly since an

-14-

ultrasound six months earlier. (Tr. 292, 891). In his report dated June 19, 2012, Dr. Zimmerman indicated that he would continue to monitor the renal cyst for changes every six months. (Tr. 891).

Based upon the foregoing, as well as those reasons given in Defendant's well-stated brief, the Court finds there is substantial evidence to support the fact that the ALJ considered all of Plaintiff's impairments in combination.

**IV.   Conclusion:**

Accordingly, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 2nd day of April, 2014.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-15-